UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HARLAN LEROY KELLY JR, et al,<br><br>Defendants. | Case No. 21-cr-00402-RS<br><br>**ORDER ON GRAND JURY RECORDS** |

### A. Overview

Defendant Harlan Kelly Jr. brings a motion to inspect records relating to the composition of the Grand Jury that indicted him. (Defendant Victor Makras joined in the motion at oral argument.) Kelly moves to inspect the Grand Jury records to ensure compliance the rules governing the composition of the Grand Jury were followed during the Covid pandemic. The government does not oppose most of this request, as defendants have the right to inspect these records. It objects to a few requests as unrelated to the composition of the Grand Jury. The government is partially right, but some of the disputed categories do relate to the Grand Jury's composition. For the reasons further set out below, the motion is granted in part; a modified list of records Defendants are entitled to follows the discussion below, along with a protective order.

### B. Background

The Jury Plan for this district is laid out in General Order 6, which was approved by the Judicial Council of the Ninth Circuit on July 19, 2017. *See* General Order 6, available at https://cand.uscourts.gov/wp-content/uploads/general-orders/GO_06_8-7-2017.pdf. On June 9, 2020,

General Order 77 revised the Jury Plan due to the Covid pandemic, in two ways: lowering the minimum age at which persons may request to be excused from jury service on account of age from 75 to 70, and extending the periods for deferring or postponing service. That order was abrogated on May 19, 2021. The order was last amended on August 17, 2021. The indictment in this case was returned by a grand jury on October 19, 2021.

### C. Legal Standard

The Jury Service and Selection Act ("JSSA") declares "[i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The JSSA gives defendants the right to move to dismiss the indictment for substantial failure to comply with the act's provisions. 28 U.S.C. § 1867(a). It further provides that the records used by the clerk in the jury selection process may be disclosed for the preparation of such a motion. *Id.* § 1867(f).

### D. Discussion

Kelly moves to inspect 22 categories of information, e.g., the jury plan currently in effect, and statistical or demographic analyses produced to ensure the jury wheels complied with the jury plan and relevant laws. The government does not oppose the vast majority of these requests, as it acknowledges defendants have a right to inspect records relating to the grand jury's composition. The government objects only to a few categories of information sought, which will be taken in turn. First, the government asks to limit Requests 16 and 17, and Kelly does not object to those limitations (as they are really just clarifications) so those are granted as limited by the government.

Next, Request 9 asks for a "record of calculations as described in Section XIV of General Order No. 6." This section provides that "[a]t least one grand jury will be impaneled serving the entire district and will serve its term in San Francisco," and that "[t]o impanel district-wide grand juries, the Clerk will draw at random from a pool of qualified persons of each jury division for the grand jury panel such number of prospective grand jurors in the same ratio that the number of registered voters in each jury division bears to the total number of registered voters in the district."

The government moves to limit this request to the San Francisco Division, citing *United States v. Holmes*, No. 18-CR-00258-EJD-1, 2020 WL 5408163, at *6 (N.D. Cal. Sept. 9, 2020), which limited a similar request to the San Jose division.[1] However, that decision noted the grand jury was a San Jose grand jury, so there was no possibility it was a district-wide grand jury. At oral argument, the government proffered that this was not a district-wide grand jury. Thus, the request is limited to the San Francisco division.

Next, the government moves to limit Request 21. In Request 21, Kelly seeks "[a]ny order reflecting the beginning of the term of the grand jury that returned the indictment in this case and any records or orders related to any decision to extend the life of the prior grand jury or to transfer evidence from one grand jury panel to another." The government points out information relating to prior grand juries is irrelevant to the grand jury that returned this indictment, although it acknowledges the beginning date of the grand jury is relevant information. (Any evidence "transferred" from a prior grand jury would need to be re-heard by the later grand jury anyway.) Kelly responds that there is a public right of access to ministerial grand jury records, unlike the secrecy governing investigative records. However, it seems to overstate the case to say there is some absolute right to ministerial grand jury records, and they are not relevant under the JSSA, except the beginning date. Further, the cases he cites are distinguishable, for example, because the government did not oppose the request, *United States v. Diaz*, 236 F.R.D. 470, 479 (N.D. Cal. 2006), or there was a specific allegation of irregularities within the instructions, *United States v. Belton*, 2015 U.S. Dist. Lexis 52426, at **8–9 (N.D. Cal. 2015), creating a reason for inspection separate from the JSSA. Here, the government opposes the request for anything beyond the beginning date of the indicting grand jury. Only that date is relevant under the JSSA. Thus, this request is granted only as to that date.

Finally, the government objects to Request 22, for instructions given to the grand jury. In

---

[1] Technically, the government cites "*United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani*, Dkt. No. 420-2," but this Dkt. No. 420-2 is unrelated to this issue; Kelly cites this decision elsewhere and it appears to be the only decision from this case that is exactly on point, so it is a safe assumption the government made a citation error.

1    response, Kelly can only rely on the ministerial records argument discussed immediately above.
2    On the other hand, Kelly acknowledges there are also decisions ruling the legal instructions are
3    protected by grand jury secrecy. *United States v. Morales*, No. 05-CR-0443-WBS, 2007 WL
4    628678, at *4 (E.D. Cal. 2007). Whether or not the instructions are protected by grand jury
5    secrecy, it is sufficient to note that the instructions do not relate to the composition of the grand
6    jury, so they are not appropriate for inspection under a motion for records under the JSSA.
7          Separately, the government also makes its own requests: that a protective order be entered
8    governing the handling of the grand jury records, like those imposed in past cases in which
9    inspection was granted, and that it receives the same records as the defendants. Kelly does not
10   oppose these requests, and supplies a protective order, which the government consented to at oral
11   argument, so the protective order is granted with only one modification: Kelly's proposed
12   protective order refers to his own motion for the records that should be released, which is now
13   inaccurate as some of those requests were denied or limited. For clarity's sake, a final version of
14   the granted requests and a modified protective order are included below; these also make clear the
15   records will be provided to Makras as well.
16         Thus, for the reasons set forth above, the motion for inspection of grand jury records is
17   granted in part and denied in part, with a protective order, as set out below.
18         The Clerk of the Court for the Northern District of California shall provide to counsel for
19   both Defendants and the government, and file a sealed copy on the docket provided as discussed in
20   the protective order, within 21 days of this order:
21         1. The Jury Plan for the Northern District of California currently in effect and, if different
22   in any respect, at the time the grand jurors who returned the Indictment on October 19, 2021, were
23   summoned in this case. The Jury Plan is believed to be General Order 6: Plan for the Random
24   Selection of Grand and Petit Jurors, as amended August 17, 2021 (General Order No. 6).
25         2. Any documents that reflect changes from previous procedures from the Jury Plan for the
26   grand jury or creation of the grand jury because of COVID-19.
27         3. Any order of the Court that affects the previous procedures or the Jury Plan for the

ORDER ON GRAND JURY RECORDS
CASE NO. 21-cr-00402-RS
4

United States District Court
Northern District of California

grand jury or creation of the grand jury because of the COVID-19 pandemic.

    4. The jury division or divisions chosen for the grand jury empaneled from July 1, 2021 to October 19, 2021.

    5. Any documents that reflect the description of reasons for the choice of the jury division or divisions for the grand jury empaneled from July 1, 2021 to October 19, 2021.

    6. Any AO-12 form or JS-12 form created that relates to the Master Jury Wheels that were used to summon the grand jurors who returned the Indictment in this case on October 19, 2021, as required by 28 U.S.C. § 1863(a).

    7. Any other statistical or demographic analyses produced to ensure that the Master Jury Wheels that were used to summon the grand jurors who returned the Indictment in this case were in compliance with the Jury Plan, Jury Selection and Service Act, and Constitution.

    8. The date on which the Master Jury Wheels that were used to summon the grand jurors who returned the Indictment in this case were refilled as described in Section VII of General Order No. 6.

    9. The record of calculations as described in Section XIV of General Order No. 6, only as to (1) the Clerk's calculation of the number of registered voters in each of the counties comprising the San Francisco division, and (2) the number of prospective grand jurors selected from the pool of qualified persons for the San Francisco division.

    10. Any general notice explaining the process by which names were drawn from the pool of qualified persons of each jury division for the grand jury panel.

    11. The calculation of the number of potential jurors from San Francisco-Oakland, San Jose, and Eureka jury divisions to ensure compliance with the numbers listed in Sections VII and XIV of General Order No. 6.

    12. The source of data in electronic form for the Master Jury Wheels used to summon the grand jurors who returned the Indictment in this case, as described in General Order No. 6, Sections VI, VIII, and XIV. The data should include, as available, Race, Gender, Ethnicity, Year of Birth, Zip Code, County, and Jury Division. The data shall not include any personal information that could be used to identify any individuals, such as name or street address.

13. The Master Jury Wheels data as described in the General Order No. 6, Sections VII, VIII and XIV, in electronic and accessible form that includes, Jury Number, Race, Gender, Ethnicity, Year of Birth, County, and Jury Division. The data shall not include any personal information that could be used to identify any individuals, such as name or street address.

14. The date when the grand jurors who returned the Indictment in this case were summoned.

15. The number of persons summoned from the Master Jury Wheels to be considered as grand jurors. This number should further be categorized by number per jury division.

16. The blank juror qualification and blank summons forms for the persons summoned to potentially be grand jurors.

17. Any SurveyMonkey or other COVID-19 questionnaires sent to the prospective grand jurors – note this only means the blank forms, not the completed forms filled out by potential jurors.

18. The Juror Numbers for the persons selected as potential grand jurors from July 1, 2021 to October 19, 2021.

19. The disposition of each summoned potential grand juror as to excusal, deferment, disqualification, or selection as described in General Order No. 6 Sections IX-XII.

20. The Juror Number for each grand juror who retuned the Indictment in this case.

21. Any order reflecting the beginning of the term of the grand jury that returned the Indictment in this case.

The disclosure of these materials is subject to the following protective order:

1. Absent an order from the Court, the materials may be used only in connection with the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures. The materials may not be used for purposes of jury selection, trial, or any other matter other than the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures.

2. The materials must be returned to the Court at the commencement of jury

selection or counsel must certify that the materials have been destroyed and that no materials have been retained in any duplicative form.

3. The Clerk of the Court shall file a SEALED copy of the records on the docket for purposes of maintaining a record of the production.

4. Consistent with 28 U.S.C. § 1867(f), the materials may not be disclosed, shown or distributed in any manner to third parties. Similarly, the materials may only be disclosed to individuals who have a need to view the materials for purposes of the defined scope of the production, as set forth above.

5. Defendants shall not possess the materials at any time, except when reviewing the materials with counsel.

6. Any attorney who accesses the materials is personally responsible not only for his or her compliance with this Protective Order, but also his or her compliance with the requirements of this Protective Order and compliance by any staff member or other person who is shown the materials consistent with the parameters of this Order.

7. Penalties: Counsel and Defendants are reminded that "[a]ny person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both." 28 U.S.C. § 1867(f).

Finally, the Court notes Defendants do not seek any personal identifying information (names, addresses, telephone numbers, full dates of birth, or Social Security numbers) for the individuals referred to in the relevant records, and none may be disclosed. Nevertheless, if any of the above-granted requests are later determined to contain such information, the parties shall file a proposed protective order.

**IT IS SO ORDERED**.

Dated: December 22, 2021

_____
RICHARD SEEBORG
Chief United States District Judge