UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HARLAN LEROY KELLY JR.,<br>Defendant. | Case No. 21-cr-00402-RS-1<br><br>**ORDER ON MOTIONS IN LIMINE** |
|---|---|

The below summarizes the rulings on the Parties' motions in *limine*, which may be revised at trial. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

**I. GOVERNMENT'S MOTIONS IN *LIMINE***

**A. Motion No. 1: Co-Conspirator Statements by Victor Makras and Walter Wong**

The Government seeks a ruling to permit the introduction at trial of a list of specified texts, emails, and other documents that it contends represent admissible statements by Victor Makras and Walter Wong, both alleged co-conspirators of Harlan Kelly, under Federal Rule of Evidence 801(d)(2)(E). Kelly opposes, arguing that the Government cannot establish either conspiracy by a preponderance of the evidence, or that all statements were made during or in furtherance of the conspiracy. Kelly further contends that a blanket order barring Defendant's introduction of co-conspirator statements would run afoul of Federal Rule of Evidence 803.

A statement by a co-conspirator is admissible if the Government establishes by a preponderance of the evidence that 1) a conspiracy existed at the time the statement was made; 2)

1  the defendant had knowledge of and participated in the conspiracy; and 3) that the statement was
2  made in furtherance of the conspiracy. *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir.
3  2006). "Once the conspiracy has been proven under these standards, only 'slight evidence' is
4  necessary to connect a coconspirator to the conspiracy." *See United States v. Perez*, 658 F.2d 654,
5  658 (9th Cir. 1981). Although insufficient on their own, the "district court may consider the
6  coconspirator's statements themselves in determining whether the preliminary fact of a conspiracy
7  has been proven by a preponderance of the evidence." *United States v. Knigge*, 832 F.2d 1100,
8  1103 (9th Cir. 1987), *amended by* 846 F.2d 591 (9th Cir. 1988) (citing *Bourjaily v. United States*,
9  483 U.S. 171 (1987)).

10  Here, with one exception, the Government's motion has presented sufficient foundational
11  evidence to conclude that the statements it seeks to introduce are conditionally admissible, subject
12  to being stricken if necessary.[1] *See United States v. Zemek*, 634 F.2d 1159, 1169 (9th Cir. 1980)
13  ("The procedure of conditionally admitting co-conspirator's statements subject to later motions to
14  strike is well within the court's discretion."); *see also id.* at 1169 n.13 ("In light of consistent
15  Ninth Circuit precedent allowing conditional admission, we reject [the] argument for a mandatory
16  pretrial determination.")

17  Kelly's arguments that statements predating the date of the conspiracy in the indictment or
18  that postdate the closing of the Quicken loan should not be admitted because they were not made
19  during the conspiracy are unavailing. The Superseding Indictment indicates that the conspiracy
20  between Kelly and Makras continued "through a date unknown, but *to at least* in or about April
21  2015," Dkt. 64 at 2, and that the conspiracy between Kelly and Wong began "at a date unknown,
22  but *no later than* in or about September 2014." *Id.* at 15. Further, even statements postdating the
23  close of the loan could further the conspiracy (e.g., if used for execution of steps in the conspiracy,
24  or for cover up). Kelly's general objection regarding whether the offered statements are "in

---

[1] Relatedly, the defense will be unable to introduce co-conspirator statements except to the extent they are allowed by Fed. R. Evid. 803 or other relevant rules of evidence.

furtherance of" the conspiracy, moreover, would be answered by the statements' conditional admission. Defendant is free to raise objections he may have to specific statements at trial.

Defendant also implies, without outright arguing, that the admission of co-conspirator statements might violate the Confrontation Clause. This has no merit. As the proffered material is not testimonial—that is, there is no indication that they were made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *Crawford v. Washington*, 541 U.S. 36, 52 (2004) (citation omitted)—its introduction would not violate the Confrontation Clause.

### B. Motion No. 2: Defendant's Own Statements

The Government seeks a ruling to admit Kelly's prior statements if offered against him, but prevent Kelly's prior statements if offered by the Defense. As with a similar motion in *limine* filed in the related *Makras* case, Defendant correctly argues these issues can be addressed if and when they come up, in context, at trial. The motion is therefore denied, without prejudice to specific offers of evidence, and specific objections, at trial.

### C. Motion No. 3: References to Punishment & Attempts to Elicit Jury Sympathy

The Government seeks to preclude all references to punishment from the jury, as well as any "improper efforts to elicit jury sympathy." As required, both Defendant and the Government shall be precluded from referencing the particulars of punishment, or making improper attempts to elicit jury sympathy. The Government's motion, however, is indeed overbroad. With Defendant's representation that he "is aware of the rules concerning references to punishment or improper attempts to elicit jury sympathy, and intends to follow them," Dkt. 240 at 7, the Government's motion is denied without prejudice. While statements suggesting that the trial is taking a toll on Defendant's mental health or family's wellbeing would be improper, turns of phrase or references to topics that are not intended to provoke the sympathy or ire of the jury—particularly if necessary for factual rebuttal or impeachment—are permitted.

### D. Motion No. 4: Witness Interview Reports

Arguing FBI Form 302s are "often mishandled at trial," the Government seeks an order

precluding Kelly from quoting or introducing Form 302s, publishing Form 302s to the jury, or otherwise suggesting to the jury that Form 302s are statements of the witnesses. As previously expressed in response to a similar motion in *limine* filed in the related *Makras* case, the utility of any particular Form 302 is an issue more appropriately addressed at trial, not in a vacuum. With Defendant's representation that "he will of course comply with the Federal Rules of Evidence, and likewise expects the Government to do so," Dkt. 240 at 9, this motion is denied without prejudice to specific objections at trial.

### E. Motion No. 5: Reciprocal Discovery Obligations

The Government moves for an order to enforce reciprocal discovery obligations under Federal Rules of Criminal Procedure 12, 16, and 26 and to preclude Defendant from introducing in his case-in-chief any responsive evidence that has not yet been provided pursuant to those rules. Defendant responds that he has complied with his obligations thus far. With no evidence of noncompliance presented, a ruling on whether Defendant has complied with his discovery obligations will be reserved until previously undisclosed evidence, if any, is introduced at trial. Accordingly, the Government's motion is denied without prejudice to specific objections that may be raised at trial.

### F. Motion No. 6: Rule 1006 Summaries

The Government seeks an order admitting seven categories of Rule 1006 summaries at trial, claiming they are all based on voluminous evidence. Kelly argues the motion should be denied, as the Government's request is to admit an unidentified number of summary charts, direct examination of the underlying records may be preferable to summaries, and use of a summary to prove a negative is suspect.

Under Federal Rule of Evidence 1006, a party may "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," so long as it "make[s] the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." Fed. R. Evid. 1006. As indicated during the Pretrial Conference, the Government has provided Defendant with the

summaries it intends to introduce, which Defendant is still reviewing. A decision on whether the data regarding finances and transactions are both admissible and sufficiently voluminous to render Rule 1006 summaries appropriate is therefore deferred until after Defendant concludes his review and indicates whether this remains an issue of dispute.

### G. Motion No. 7: Sequestering of Witnesses

The Government moves for a sequestration order to exclude all witnesses from trial when they are not testifying, except for FBI Special Agent Brendon Zartman, the lead case agent. *See* Fed. R. Evid. 615 ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony.") This motion is granted. Although a potential expert witness may in many circumstances be exempted from the rule, "[t]he burden . . . remains on the party requesting the Rule 615(3) exception." *United States v. Seschillie*, 310 F.3d 1208, 1213 (9th Cir. 2002). The parties are therefore expected to make the required fair showing for any witnesses they deem essential.

## II. DEFENDANT'S MOTIONS IN *LIMINE*

### A. Motion No. 1: Financial Ledger

Defendant seeks an order to admit a ledger kept by Kelly under Federal Rule of Evidence 807, the residual exception against hearsay. The Government opposes, arguing the ledger does not meet the four criteria set forth in Rule 807(a)—namely, that "(1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a).

Rule 807 is not meant to be a "broad hearsay exception, but rather is to be used rarely and in exceptional circumstances." *Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980). Applying the residual exception essentially requires a court to determine "whether the totality of the circumstances surrounding the statement establish its reliability sufficiently enough to justify

foregoing the rigors of in-court testimony (e.g., live testimony under oath, cross-examination) that ordinarily guarantee trustworthiness." *Smith v. Davis*, No. 19-CV-08152-SI, 2020 WL 3488035, at *6 (N.D. Cal. June 26, 2020), *aff'd sub nom. Smith v. Broomfield*, No. 20-17037, 2023 WL 313210 (9th Cir. Jan. 19, 2023).

        Here, the circumstances do not counsel admission. Defendant explains that the ledger, which was seized by the FBI and stored on Kelly's computer in his iCloud storage, is sufficiently trustworthy because Kelly voluntarily created the ledger—one of several in which he regularly managed, recorded, and updated his finances—in the privacy of his own home, prior to being charged or indicted, when he "had no reason to suspect that he was under investigation" at the time. Dkt. 230 at 4. Yet as the Government notes, there are no dates on the face of the document itself, nor any support for when the specific entry Defendant wishes to highlight in the ledger—the "Cash on Hand 8,000"—was written. Dkt. 237 at 3. Even if we accept Defendant's claim that the ledger was created in January of 2014,[2] the Government rightly points out that the ledger's connection to whether Kelly had cash on hand and brought it on vacation in March of 2016, over two years later, rests on a "speculative chain of inferences,"[3] Dkt. 237 at 5, undercutting the argument that the ledger is necessary evidence for a material fact. There are indeed several alternatives for evidence more probative of Defendant's desired point, including testimony about the ledger itself, or more directly, testimony regarding use of cash during the trip. *See United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010) (noting that it was not an extraordinary circumstance, but rather, an "unprecedented step" to be "using 807 to admit the statements of a declarant who has chosen not to testify and whose statements lack significant indicators of

---

[2] As revealed during the Pretrial conference, this is itself somewhat of an inference, contextually drawn from the dates of the materials produced along with the ledger.

[3] "[T]he finder of fact must assume all of the following, none of which is actually in the ledger Kelly seeks to admit: 1) that the document was created by Kelly; 2) that it was created, or at least reflects, the Kelly's finances in March 2016 when the Hong Kong trip occurred; 3) that "Cash on Hand" means cash in Kelly's safe; 4) that Kelly in fact had $8,000 in cash in his safe in March 2016; 5) that he withdrew this money; and 6) used it in Hong Kong." Dkt. 237 at 5.

trustworthiness."). For these reasons, Defendant's motion is denied.

### B. Motion No. 2: Mortgage Application Declaration

Defendant seeks to exclude information that Defendant omitted information on the Owner's Declaration included in his October 11, 2014 mortgage application—specifically, that the Declaration did not disclose contractor work done by Wong—pursuant to Fed. R. Evid. 401 and 403. Defendant contends that because no work was done within 90 days of the submission of the Owner's Declaration, inclusion of this evidence would violate Rules 401 and 403, as California law would have rendered invalid any lien that Wong or his subcontractors might have sought[4], and there is no evidence Defendant actually made any misstatements on the form. The Government responds that Defendant's argument is based on a misreading of the invoice: July 10, 2014 is the date corresponding to the last *purchase* of materials, and is not indicative of when work was done. Instead, the Government points to the invoice, which notes that labor was billed from "Jan to Jul 14," Dkt. 231, Exhibit 3 (October 2014 Invoice) at 2, as well as text message exchanges suggesting that work continued in August 2014 and November 2014.

Review of the available evidence indicates that construction may indeed have continued past July 10, 2014. Defendant's motion is therefore denied. As the Government notes, Defendant nonetheless remains free to argue that the Declaration was believed to be truthful at the time at which it was made, an issue of credibility for the jury to decide.

### C. Motion No. 3: "Operation Money Pit"

Defendant seeks, without opposition from the Government, to exclude the name of the investigation, "Operation Money Pit"—but not the fruits of the investigation itself—from being referenced at trial. This motion is therefore granted.

---

[4] *See* Cal. Civ. Code § 8412 ("A direct contractor may not enforce a lien unless the contractor records a claim of lien after the contractor completes the direct contract, and before the earlier of the following times: (a) Ninety days after completion of the work of improvement. (b) Sixty days after the owner records a notice of completion or cessation."); *id.* § 8414 ("A claimant other than a direct contractor may not enforce a lien unless the claimant records a claim of lien . . . [b]efore the earlier of the following times: (1) Ninety days after completion of the work of improvement. (2) Thirty days after the owner records a notice of completion or cessation.").

### D. Motion No. 4: *Makras'* Conviction

Defendant seeks to preclude all references to the fact that co-defendant Makras completed his trial and was convicted, and urges adherence to the Ninth Circuit Model Criminal Jury Instruction 2.15. The Government concedes it is well-settled that it may not introduce evidence of a co-defendant's conviction as substantive evidence of Defendant's guilt. It maintains, however, that such evidence may be used to impeach a co-defendant's credibility as a witness, and asks that a ruling on such evidence be reserved. The Government also objects to Jury Instruction 2.15, noting it is generally intended for co-defendants who cease to be part of the case mid-trial, and argues the preferable practice is to avoid all reference to prior trials.

Evidence of a conviction may indeed "be considered by the jury in evaluating witness credibility." *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981). With the Government's representation that it will not introduce evidence of Makras' trial for improper purposes, Defendant's motion to exclude references to Makras' conviction is granted, except as to any credibility exception that may be necessary should Makras testify at trial.

As to instructions, the comments to Instruction 2.15 indeed suggest that the instruction is contemplated for situations when a co-defendant leaves after a trial has begun. On the other hand, Instruction 2.16 refers to a defendant's previous trial, and seem more appropriate for when a defendant has himself been tried before. By comparison, Instruction 2.15 seems more appropriate—though the language should be slightly adjusted to account for the fact that Makras did not depart mid-trial. A specific order on this, however, will be deferred, to be determined with the remainder of the jury instructions in the case.

**IT IS SO ORDERED**.

Dated: June 14, 2023

_____
RICHARD SEEBORG
Chief United States District Judge