UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HARLAN LEROY KELLY JR.,<br><br>Defendant. | Case No. 21-cr-00402-RS-1<br><br>**ORDER ON MOTIONS TO EXCLUDE** |

The below summarizes the rulings on the Parties' motions to exclude expert and other testimony.

**I. MOTION TO EXCLUDE TESTIMONY OF BARRY WHITE**

Defendant offers Barry White as an expert witness on construction. In particular, White may offer testimony about "the scope of the work performed on the Kelly residence, and the percentage contribution added by Walter Wong during the period of the remodel," and testimony that "Mr. Wong's invoice submissions do not follow industry standard practices." Dkt. 227 at 3, 6. These opinions are claimed to be based on his experience in construction and remodeling, as well as "review of the work done by Walter Wong, and the billing submitted by both persons." *Id.* at 6.

The Government argues this testimony should be excluded on three grounds: first, Defendant's expert disclosure fails to meet Rule 16's disclosure requirements; second, White's testimony is not based on sufficient facts or data, nor the product of reliable principles or methods; and third, White's testimony should be excluded as prejudicial, given that he has not actually reviewed the work on which he is expected to provide expert testimony.

**A. Rule 16 Disclosure Requirements**

Federal Rule of Criminal Procedure 16(b)(1)(C) requires defendants to provide a written disclosure that includes, in addition to the witness' qualifications, "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C). As with the parallel disclosure mandate for the Government in Rule 16(a)(1)(G), Rule 16(b)(1)(C) "does not require recitation of the chapter and verse of the experts' opinions, bases and reasons," *United States v. Skates*, No. 15-CR-00285-LHK, 2019 WL 634649, at \*6 (N.D. Cal. Feb. 14, 2019) (citation omitted), but it does require that the "bases and reasons" provided "must be sufficient to allow counsel to frame a *Daubert* motion (or other motion *in limine*), to prepare for cross-examination." *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 2347406, at \*1 (N.D. Cal. June 8, 2010).

Here, Defendant has provided sufficient information about White's qualifications, noting that he "has over 40 years of experience as a licensed contractor" and "personally supervised the construction and remodeling of hundreds of homes," including the Kelly residence. Dkt. 227 at 3. Defendant has also provided a chart of construction costs to which White may testify.

Yet these disclosures reveal scarcely little about other topics—including, crucially, opinions about the work and practices of Walter Wong, a likely area of focus at trial. For example: White may testify to "industry standards regarding invoice practices and submissions," and opine specifically that "Wong's invoice submissions do not follow [those] industry standard practices." Dkt. 227 at 3. That is all the disclosure provides on that subject. While "the requirements imposed by Rule 16 are not overly demanding," *United States v. Nelson*, No. 17-CR-00533-EMC-1, 2021 WL 75757, at \*4 (N.D. Cal. Jan. 8, 2021), they do require more than such a bare-bones disclosure. Accordingly, the defense must provide at least a few sentences describing the actual opinions to which White will testify, *and* the bases that underlie them,[1] by Friday, June 23, 2023.

---

[1] The latter of these (disclosure of the bases for White's opinion) is required primarily to address the concerns regarding his potential reliability, as both detailed in the Government's briefing and raised during the Pretrial Conference.

**B. Reliability of White's Methods**

The Government next claims that White's testimony is altogether inadmissible under Federal Rule of Evidence 702 and the standard set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), as Defendant has not disclosed sufficient information about the facts or methods on which White would rely to come to his opinions (specifically, that Wong did not follow industry standards). Not only does the Government claim that it has been unable to probe the reliability of White's undisclosed methodology; but it also claims that White has not seen, let alone reviewed, paperwork related to the work performed by Wong on the Kelly residence. Because White also did not review Wong's work firsthand, or even "appear familiar with the work" that was performed, the Government argues that any potential testimony would be based predominantly on "subjective views" drawn from White's personal experience, which is "woefully insufficient" to support conclusions about Wong's work. Dkt. 238 at 6.

Pursuant to Rule 702, an expert witness "who is qualified . . . by knowledge, skill, experience, training, or education may testify" if, among other requirements, the expert's testimony is "based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). Trial judges have the "special obligation . . . to ensure that scientific testimony is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999) (citing *Daubert*, 509 U.S. at 589 (1993)). On this basis, "'[a]n expert's opinions that are without factual basis and are based on speculation or conjecture' are inadmissible at trial." *California ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1181 n.4 (9th Cir. 2010) (citation omitted). Importantly, "[t]he expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (quoting Fed. R. Evid. 703).

White's experience would seem to qualify him as an expert on the general topic areas for which he is offered. Yet "[e]ven where the reliability of expert testimony is largely dependent on the expert's experience, the witness must still explain how the experience leads to the conclusions

reached, why the experience provides a sufficient basis for the opinions, and how the experience is reliably applied to the facts." *Cerna*, 2010 WL 11627594, at *6 (citations omitted). Courts will not "simply take the expert's word for it that his or her experience renders the entirety of his/her testimony reliable," *id.*; indeed, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157.

Here, the lack of an articulated analysis or methodology by which White will reach his conclusions seems to stem from Defendant's failure to disclose the specific conclusions that White will reach. Of course, if White cannot actually articulate any principled basis for his opinions, then his testimony will be excluded as mere *ipse dixit*; but as Defendant notes, White's testimony "does not involve application of a novel or complex scientific theory." Dkt. 249 at 3; *see also Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." (citation omitted)). So long as White can reasonably articulate a basis for his opinions, they would not be "junk science" requiring exclusion under *Daubert*.[2] *See San Francisco Baykeeper v. City of Sunnyvale*, No. 5:20-CV-00824-EJD, 2022 WL 4133299, at *9 (N.D. Cal. Sept. 12, 2022).

At this juncture—particularly as Rule 702 "contemplates a broad conception of expert qualifications," *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) and "the rejection of expert testimony is the exception rather than the rule," *Caldwell v. City of San Francisco*, No. 12-CV-01892-DMR, 2021 WL 1391464, at *2 (N.D. Cal. Apr. 13, 2021) (quoting

---

[2] *United States v. Vera*, a case on which the Government relies, is inapposite. It found that experience was insufficient where an expert's qualifications drew from his general experience with narcotics, which would lead to the reasonable assumption that his testimony "would be limited to common code words for drugs that he learned through his training and experience," but would not support testimony "on drug jargon and drug quantity [that] include[d] interpreting terminology he encountered for the first time in [the] investigation" and very specialized, "noncoded words (such as 'that' or 'one') used in particular contexts." 770 F.3d 1232, 1244 (9th Cir. 2014). White is not represented as offering similarly specialized testimony.

Fed. R. Evid. 702, Advisory Committee Notes)—there are sufficient indicia of reliability to refrain from triggering the court's gatekeeping function. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction . . . are the traditional and appropriate means of attacking shaky but admissible evidence," *Daubert*, 509 U.S. at 595, and the Government will have ample ability to raise its objections to White's shoddy or nonexistent review at trial.

### C. Relevance and Prejudice

The Government also argues that in lacking a reliable foundation, White's testimony should be precluded because any probative value it commands is far outweighed by the danger of unfair prejudice and confusion for the jury. This is particularly so because it covers a topic that has limited relevance to the case. *See* Dkt. 238 at 7 ("Whether or not Wong's invoices conformed to some industry standard . . . is irrelevant. The only relevant inquiry on this issue is the value of the work performed by Wong in comparison to how much he was compensated by Kelly."). Here, the Government reads White's relevance too narrowly. The disclosure *does* suggest that White will opine on "the value of the work performed by Wong," and it is not apparent that vigorous cross examination will be insufficient to identify or rebut any alleged flaws with White's analysis.

For these reasons, the motion is denied without prejudice, subject to an amended disclosure by Defendant that cures the defects identified above.

## II.  MOTION TO EXCLUDE 'OTHER ACT' EVIDENCE

Defendant seeks to exclude five categories of evidence that the Government will offer, claiming they constitute evidence of character or other crimes, wrongs, or acts that are inappropriate under Fed. R. Evid. 404, and are otherwise irrelevant or overly prejudicial. The Government opposes, arguing the evidence is either "inextricably intertwined" with the charged crimes and thus exempt from the strictures of Rule 404(b), *see United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995) (explaining two general categories of evidence are so exempt: evidence that "constitutes part of the transaction that serves as the basis for the criminal charge," and evidence that is necessary "to permit the prosecutor to offer a coherent and

comprehensible story regarding the commission of the crime"), or in fact used for a permissible purpose under Rule 404(b)(2). *See* Fed. R. Evid. 404(b)(2) (providing that evidence of other crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). For such other act evidence to be admissible, it must meet the Ninth Circuit's four-part test—(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged, *United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020) (citation omitted)—and its probative value must be balanced against any prejudicial effect. *See United States v. Wolfenbarger*, No. 16-CR-00519-LHK-1, 2020 WL 556879, at *2 (N.D. Cal. Feb. 4, 2020) ("If these four elements are satisfied, a court must balance the probative value of the evidence against its prejudicial effect to determine whether it is admissible under Rule 403." (citing *United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007)).

### A. The 2004 and 2013 Trips to Asia

The Government seeks to present evidence relating to two trips that Kelly took with Wong prior to the events at issue in the Superseding Indictment: one to China, Macau, and Hong Kong in 2004 on a trip for San Francisco business executives and public officials; and one to China in 2013 for Kelly, along with a group of others. These trips are offered because they are "strikingly similar to the arrangement Wong and Kelly had during the 2016 Hong Kong trip" and therefore offered as evidence of intent to commit honest services fraud (via establishing the same *modus operandi*), lack of mistake or accident regarding the 2016 trip, and motive for bribery. Dkt. 241-1 at 3. The Government also argues that the latter, 2013 trip is also "inextricably intertwined with the charged honest services fraud conspiracy" because this is evidence of "the stream of corrupt benefits that Kelly [wa]s accepting from Wong," who already had an LED lights contract with the SFPUC at the time, and was hoping to win additional business from the City. Dkt. 250 at 7.

In response, Defendant makes four arguments: (1) there are no allegations that Kelly provided anything of value in 2004 or 2013, and therefore the evidence would not show motive,

intent, or modus operandi, but only that Wong had a habit of paying for others; (2) whether Wong paid for things on those trips is disputed, given that Wong has no records showing that he did pay for Kelly; (3) the evidence is offered to show Wong's intent, but silent on Kelly's intent (or lack thereof) to exchange something of value in return for an official act; and (4) the evidence would require a distracting mini-trial relating to why Kelly and other officials went on the trip.

The two prior trips do not meet the threshold required to be considered part of the same transaction on which the criminal charge is based. Defendant notes that these are separate trips—in one case, over a decade earlier than that charged in the Superseding Indictment—which are a far cry from a "single criminal episode." *See Vizcarra-Martinez*, 66 F.3d at 1012 (citing caselaw finding that contemporaneous sales of cocaine and crank were inextricably intertwined).

Moreover, the 2004 trip does not seem necessary to a coherent and comprehensible story: while it certainly would provide additional context as to the relationship between Kelly and Wong, there is no indication that the prosecution would have difficulty presenting evidence relevant to its charges without ever referencing the earlier trip.[3] *See id.* at 1013. The honest services fraud and conspiracy alleged centers around events that are *not* necessarily implicated by that earlier trip.[4]

This is not true of the 2013 trip, however, which is much less attenuated in time and therefore admissible for providing a coherent and comprehensible story. The 2013 trip is also admissible under Rule 404.[5] Defendant reads Rule 404 and the evidence too narrowly. Not every

---

[3] As raised by Defendant during the Pretrial Conference, this is all the more true given that there were many trips that Wong took in the 2000s timeframe, with various combinations of individuals, which the Government does not intend on referencing.

[4] The exclusion of evidence regarding the 2004 trip obviates the need to address Defendant's more specific objection to the introduction of the "salacious," "unsupported implication that Mr. Kelly engaged with prostitutes" during the 2004 trip, Dkt. 241 at 5, it bears noting that such evidence is unduly prejudicial in nature, as economic benefit can be established without inquiring into the nature of the expense, and prostitution "has absolutely nothing to do with the charged honest services conspiracy" that occurred a decade later. *Id.* To be clear, while the Government may make reference to the 2013 trip and evidence that Wong paid for lodging, meals, and entertainment, it may not reference allegations about prostitution.

[5] The evidence satisfies the four-part inquiry: it tends to prove a material point; it does bear many similarities to the circumstances alleged in the offense that has been charged; it is based on sufficient evidence in the form of corroborating witnesses; and it is not too remote in time. *See*

piece of evidence must speak to all of the legal elements of the crime charged. While there is no explicit allegation that Kelly provided Wong a thing of value in exchange for the alleged payments on the trip, it will, at the very least, help shed light on Defendant's lack of mistake or accident in accepting any alleged funds paid during the 2016 trip. In addition, that the evidence would go to the intent of Wong is relevant to Count Five, the conspiracy to commit honest services wire fraud, for which a central element is whether or not Defendant knowingly conspired with Wong and others to devise a fraudulent scheme—and whether Defendant and Wong *intended* to do so. At this stage, the risks of delay from the introduction of additional evidence regarding why Defendant and other officials went on the trip seem overblown. The motion is denied, without prejudice to specific objections that Defendant may wish to make at trial.

### B. Sunshine Ordinance & Ethics Trainings and Form 700 Disclosures

The Government seeks to present evidence of Defendant's certification that he completed ethics training, along with Defendant's lack of compliance with the requirement to file annual Statements of Economic Interest ("Form 700 Disclosures"), as evidence of Defendant's awareness of the fiduciary duties he owed to the City of San Francisco, and as evidence of Defendant's motive, intent, lack of mistake, and lack of accident in making the alleged misrepresentations at issue in his charges (such as those allegedly made to Quicken Loans).

Defendant argues that it is undisputed Kelly understood he was subject to the local regulations covering gifts and the real issues are whether he received anything of value from Wong and whether he exchanged any official act for that value. Defendant also argues this evidence is prejudicial in that it "improperly invites the jury to punish Kelly for committing a local regulatory violation," and would lead to a distracting mini-trial on competing interpretations of the Ethics Commission's gift rules. Dkt. 251 at 5.

---

*Wolfenbarger*, 2020 WL 556879, at *2 (noting that "the Ninth Circuit has upheld the admission of thirteen-year-old Fed. R. Evid. 404(b) evidence" (citations omitted)).

Defendant's arguments here are unavailing. First, they entirely fail to answer the Government's argument that this evidence is necessary for establishing that Defendant, as a public official, was required to disclose all personal loans—which is material to Counts One through Four, involving Defendant's conduct with Makras. (The Government further claims that the loans from Makras should have been characterized as a gift.) For both the rules regarding disclosure of loans and the prohibition on accepting gifts from restricted sources, evidence that the Defendant was legally required to make disclosures (or refrain from accepting gifts) but deliberately failed to do so would indeed be probative of lack of mistake and lack of accident in similar financial misrepresentations (or improper acceptance of gifts). It would also speak to intent and motive of the crimes charged. If the Defendant believes the rules are unclear and Kelly did not understand himself to be in violation, such arguments would be important to air at trial, rather than a distraction. Defendant's fear, moreover, that the introduction of this evidence might confuse the jury into adopting a lower mens rea for the bribery charge can be adequately addressed by appropriate instructions.[6]

Finally, the Government correctly notes that Defendant's signed forms confirming that he completed and verified ethics training—which specifically included rules and restrictions on gifts from restricted sources (i.e., individuals doing or seeking business with the City) and on information that may be made available to the public (e.g., including information about bids submitted to the City)—is not evidence of a crime or wrong, and is therefore not 404(b) evidence. This motion is therefore denied.

**C.  2012 Certification to the Department of Building Inspections**

The Government seeks to introduce evidence that, when applying for a permit to begin construction on his residence, Defendant falsely represented that it would be remodeled into a duplex, in order to facilitate the approval and certification process. This is offered to show that in Defendant's "desire to complete his lavish remodel of his house, [he] was willing to lie and

---

[6] The Parties are invited to suggest a stipulated instruction on this issue.

1    deceive, including by making false representations to another city agency (despite being a public
2    official himself)." Dkt. 250 at 8-9. The Government also claims the evidence is necessary to show
3    Defendant's intent in deceiving Quicken Loans to get the loan and remodel "in the manner that he
4    desired." *Id.* at 9.

5        Defendant is correct that this is impermissible character evidence. The claim that the listing
6    of the house as a duplex in December 2011 is indicative of his alleged bank fraud two to three
7    years later is a stretch—one that cannot be sustained by the theory that Defendant was so willing
8    to construct a lavish home that he would lie to anyone. *See* Fed. R. Evid. 404(b)(1) ("Evidence of
9    any other crime, wrong, or act is not admissible to prove a person's character in order to show that
10   on a particular occasion the person acted in accordance with the character.") Defendant is also
11   correct that engaging in an inquiry of whether Defendant's residence should have been listed as a
12   duplex or a single-family home would be largely unrelated to the issues in the case. This motion is
13   therefore granted.[7]

### D.  2018 Water Repairs and 2018-2019 LED Lights Payments

15       The Government seeks to introduce evidence that Wong gave Defendant discounted
16   construction work in the hopes of obtaining business with the SFPUC, including evidence that
17   Wong provided repair work to Kelly's residence for water damage. Some of this evidence (such as
18   payments made for the work), extends into late 2018, while some other pieces of evidence (such as
19   communications between the individuals) extends until mid-2019. The Government argues these
20   are properly admissible as evidence inextricably intertwined with the charged offenses, since they
21   both illustrate the transaction alleged to serve as the basis for the charged scheme and enable the
22   prosecution to tell a comprehensible story regarding the crime. In the alternative, the Government
23   argues this is admissible under Rule 404(b), as it shows motive for both Wong and Kelly, Kelly's
24   intent with respect to honest services fraud, Wong's plan in conspiring with Kelly, and lack of

---

[7] Should the Government find it necessary to raise this point as impeachment, e.g., if Defendant introduces the certification at trial, this issue can be revisited.

accident or mistake. Defendant objects on the basis that these events occur after the events in the Superseding Indictment, and their admission would unfairly expand the factual issues in the case on the eve of trial.

Here, the Government has met its burden in showing that the payments and communications described are inextricably intertwined with the charged offenses. The Superseding Indictment advances the theory that Defendant provided Wong with a competitive advantage in bidding for business contracts with the city in exchange for personal financial benefits, including discounted construction work on the Kelly residence, and Count Nine specifically references water damage repair invoices totaling $23,326.69. Evidence relating to Wong's continued repairs to the Kelly residence and communications suggesting a *quid pro quo*[8]—a distinguishing feature from the evidence of prior trips to Asia—are therefore important evidence of the honest services scheme to defraud, both as demonstrative of the charged scheme and full context for the story of the crime.[9] *See Vizcarra-Martinez*, 66 F.3d at 1012-13; *see also United States v. Sayakhom*, 186 F.3d 928, 937-38 (9th Cir. 1999), *as amended*, 197 F.3d 959 (9th Cir. 1999). This motion is therefore denied.

**IT IS SO ORDERED**.

Dated: June 14, 2023

RICHARD SEEBORG
Chief United States District Judge

---

[8] Given the enduring disputes on the topic, whether Kelly had authority over the decision to purchase LED lights from Wong is a question better suited for the factfinders at trial.

[9] Though this is admissible as that which is inextricably intertwined with the charged offenses, it also bears noting that the evidence—which is strikingly similar to the other evidence proffered in the case, supported by documentation, not too remote in time, and not unfairly prejudicial in light of its probative value—would alternatively qualify under Rule 404(b) as clear evidence of intent, motive, and lack of accident or mistake.