BRIAN H GETZ, ESQ. (CSBN: 85593)
LAW OFFICES OF BRIAN H GETZ
90 New Montgomery Street, Suite 1250
San Francisco, CA 94105
Telephone: (415) 912-5886
Facsimile:  (415) 358-4770
Email: brian@briangetzlaw.com

JONATHAN MATTHEW BAUM (CSBN: 303469)
STEPTOE & JOHNSON LLP
One Market Street
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (510)735-4558
Email: jbaum@steptoe.com

Attorneys for Defendant
HARLAN KELLY, JR.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERIA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>HARLAN KELLY, JR.,<br><br>　　　　Defendant. | Case No.: 3:21-CR-00402-RS<br><br>**DEFENDANT HARLAN KELLY JR.'S OPPOSITION TO THE GOVERNMENT'S MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>Date:　　July 10, 2023<br>Time:　　8:30 a.m.<br>Dept.:　　17th Floor – Courtroom 3<br>Judge:　　Hon. Richard Seeborg |

//
//
//
//
//
//

## I.      INTRODUCTION[1]

What's good for the goose is good for the gander. All the defense seeks here is to ask its witness, Randy Parent, the exact same questions regarding City procurement and disclosure policies and procedures that the prosecution asked its witnesses, including Kofo Domingo, Mary Tienken, Ivy Fine, and Alaric Degrafinried.[2] Notably, two of these witnesses (Fine and Degrafinried) are lawyers, and the questions the prosecution asked them were hardly narrow or connected only to specific LED procurements, but rather broadly covered the policies and procedures of the PUC, OCA, and the City as a whole. The Court should not provide different rules for the defense.

Mr. Parent need not testify as an expert to answer these questions. His knowledge comes from his direct experience working with the PUC and OCA on multiple procurements, and he has firsthand experience of the way those offices understood the procurement process, including how they handled requests for disclosure of information. The defense does not seek to have Mr. Parent offer a formal legal opinion, nor does it require the disclosure of any privileged information, because Mr. Parent never provided any legal advice to Mr. Kelly. However, should the Court rule that these questions (the same ones asked by the prosecution to its non-expert witnesses) somehow call for expert testimony when asked by the defense to Mr. Parent, the defense believes he has been properly noticed as an expert, and would ask the Court to so find.

---

[1] As the defense was preparing its response to the government's motion to exclude filed at 2:19pm today (approximately 6 hours ago), it noted that the Court has apparently already granted the government's motion, without giving the defense any opportunity to respond. Consistent with the requirements of due process, the defense respectfully requests the Court consider this opposition brief and hear brief arguments on these issues tomorrow at 8:00 a.m., or at the Court's earliest convenience.

[2] The defense explained its position to the government in a lengthy email exchange yesterday, July 8, 2023. Unfortunately, the government in its motion today quoted selectively from this exchange and did not provide the Court the full email. The defense attaches the entire email chain so that the Court may evaluate the positions of the parties. *See* **Exhibit 1** (entire email exchange between David Ward and Jonathan Baum, dated July 8, 2023.)

DEFENDANT HARLAN KELLY JR.'S OPPOSITION TO THE GOVERNMENT'S
MOTION TO EXCLUDE EXPERT TESTIMONY

## II.      FACTUAL BACKGROUND

Mr. Parent joined the City Attorney's Office in 1995, and got to know Harlan Kelly in the late 1990s when they worked together on the construction of the San Francisco County Jail. Mr. Parent left and went into private practice, but then rejoined the City Attorney's Office and began working again with Harlan Kelly in 2015, when he worked as the PUC's primary lawyer working on construction procurement.  Mr. Parent also worked closely with Mr. Kelly in the development and launch of the Contractor Assistance Center that the PUC established in order to encourage more companies—particularly smaller, local, and minority-owned companies—to bid for PUC contracts.

Mr. Parent was initially disclosed as an expert witness on April 21, 2023. (Dkt. No 224.) That disclosure explained that Mr. Parent had experience "drafting requests for bids, requests for proposals, and contract documents for public works construction projects, bidding procedures for public works contracts, and resolution of bid protests by disappointed bidders[.]" (*Id.*, at 3.) That disclosure stated that Mr. Parent "may testify about competitive bidding requirements and procedures." (*Id.*)

In a supplemental disclosure dated May 8, 2023, the defense further disclosed that Mr. Parent has experience negotiating sole source public works design and construction contracts, and that he "may testify about competitive bidding requirements and procedures," and "can explain the roles of the Commission, General Manager, Project Manager, and the Contractor Administration." (Dkt. No. 227, at 7.) That disclosure further stated that Mr. Parent "may explain the importance of receiving multiple bids." (*Id.*) While the prosecution objected to proposed defense expert Barry White, the prosecution—until today—has never objected to Mr. Parent serving as an expert in this case.

After the defense disclosed Mr. Parent as an expert in April and May, the prosecution approached him, and on May 24, 2023, Mr. Parent agreed to meet in person at the U.S. Attorney's Office, where Mr. Ward and Mr. Green both interviewed him for several hours. That interview produced an 8-page FBI report. Nearly half of that report concerned Mr. Parent's views about

DEFENDANT HARLAN KELLY JR.'S OPPOSITION TO THE GOVERNMENT'S
MOTION TO EXCLUDE EXPERT TESTIMONY

1   PUC procurement rules and policies, including whether it ever permissible for Mr. Kelly to

2   disclose documents to bidders, the timing when such disclosures were or were not allowed,

3   whether it was appropriate for Mr. Kelly to take calls from bidders while an RFP was pending,

4   and how the specific requirements of the Sunshine Ordinance applied to conduct engaged in by

5   Mr. Kelly.[3]

6          Last Thursday (July 6, 2023), defense counsel was contacted for the first time by the San

7   Francisco City Attorney's Office, expressing its concern that Mr. Parent's testimony in this case

8   (particularly any expert testimony) may violate certain City policies and regulations. Defense

9   counsel responded by stating that the defense did not seek to elicit any privileged information,

10  and that if the City Attorney's Office wanted to file a third-party objection to his testimony, they

11  needed to file something with the Court. *See* **Exhibit 11** (correspondence between Jonathan

12  Baum and Deputy City Attorney Aaron Wiener).

13         Following the conversation on Thursday, the defense filed a third disclosure concerning

14  Mr. Parent, where the defense clarified that, "in addition to testifying about competitive

15  bidding requirements and procedures and efforts made by the PUC to encourage more local

16  bidders to participate in the bidding process, as previously disclosed, Mr. Parent may also

17  testify about his understanding of policies and procedures concerning disclosure of information

18  related to procurements that applied during his time working with the Public Utilities

19  Commission and Defendant Harlan Kelly, Jr." (Dkt. No. 284, at 5.) In that disclosure, the

20  defense also set out its position regarding whether Mr. Parent's testimony is properly classified

21  as expert or lay testimony, stating, "[t]he defense's view is that th[e] Court has not previously

22  classified testimony concerning the individual witness's personal experience and

23  understanding of PUC and City policies concerning disclosure as expert testimony, and should

24  not do so for the first time with the defense's witness, Mr. Parent." (*Id.*)  It is unclear why the

25

26  _____

27  [3] The defense is not attaching the 302 as an exhibit, but will bring it to Court tomorrow so the
    Court can review it.

4

DEFENDANT HARLAN KELLY JR.'S OPPOSITION TO THE GOVERNMENT'S
MOTION TO EXCLUDE EXPERT TESTIMONY

prosecution did not previously respond to that disclosure or why it chose to wait until the Sunday night before the defense opens its case to file the present motion.

### III.   ARGUMENT

#### A.  The Prosecution Has Asked Its Witnesses Questions Regarding PUC Policies and Procedures, and the Defense Should be Afforded the Same Opportunity

Contrary to the prosecution's assertion, Mr. Ward and Ms. Green have repeatedly asked their witnesses questions that call for testimony about the ways they understood particular rules and regulations about what information was subject to public disclosure. Rather than characterizing these questions, the defense asks that the Court simply review some of these questions and decide for itself.

Ivy Fine (Direct Examination by David Ward):

> Q.     Would it have been allowed under the PUC rules and regulations at the time to provide this type of information to one specific bidder?
> A.     No.
> Q.     Why not?
> A. Information from commencement of a procurement process through award of a contract is confidential, is seen as confidential information to protect the integrity of the competitive bidding process. During that process, if a proposer was deemed to be non-responsive, a letter would go directly to that particular proposer. But unless you have some sort of a special circumstance such as that, we keep all information related to each phase of the evaluation as confidential as possible.

(*See* **Exhibit 6**, Transcript of Ivy Fine Direct Examination, p. 453-454)

Ivy Fine (Direct Examination by David Ward):

> Q.     After the PUC or the OCA had put out an RFP, were there rules limiting who could discuss that RFP with specific bidders?
> A.     Yes.
> Q.     Was there, in fact, a contact at PUC or OCA that was established as the point of contact for bidders?

5

1      A.     Yes.

     Q.     Other than that point of contact, were other PUC employees

2     allowed to provide information to a specific bidders on the RFPs?

     A.     No.

3      Q.     What about after the bids were submitted? Were PUC

4     employees allowed to communicate with any bidders about the

    evaluation process?

5      A.     Very limited and structured, and only through what is

    outlined as the official communication process in the solicitation

6     documents.

7     (*See* **Exhibit 7**, Transcript of Ivy Fine Direct Examination, p. 473-474)

8

9 <u>Kofo Domingo (Redirect Examination by Kristina Green):</u>

10      Q.     Even if someone had made a request under the Sunshine Act,

    the City employee that would comply with that request for these

11     RFPs would have been an OCA employee, is that right?

     A.     Correct.

12      Q.     Mr. Getz talked about timing under the Sunshine Act

13     request. And I believe you mentioned it's after the bids are awarded,

    correct?

14      A.     Correct.

15     (*See* **Exhibit 3**, Transcript of Kofo Domingo Redirect Examination, p. 318)

16

17 <u>Alaric Degrafinried (Redirect Examination by David Ward):</u>

18      Q.     Okay. Mr. Baum asked you about the Sunshine Act. And I

    know you testified to this yesterday. I'll ask you again. Does the

19     Sunshine Act require that all of the PUC's information be made

    public?

20      A.     Not all because there are exceptions, but pretty much

21     everything is subject to it, but there are exceptions.

     Q.     So there would be exceptions to what would be disclosed

22     that have to be evaluated before you could disclose –

     A.     Correct.

23

24     (*See* **Exhibit 10**, Transcript of Alaric Degrafinried Redirect Examination, pp. 593-594)

25 //

26 //

27

6

DEFENDANT HARLAN KELLY JR.'S OPPOSITION TO THE GOVERNMENT'S
MOTION TO EXCLUDE EXPERT TESTIMONY

Mary Tienken (Direct Examination by Kristina Green):

> Q.      Should anyone at PUC have shared these internal evaluation documents that we saw yesterday in Exhibit 661 and 662 and 667, and today in 668, with any bidder involved in the 79002-A RFP before the contract was awarded?
> A.      No.
> Q.      And why is that?
> A.      Because the scoring is intended to be confidential until a proposer is selected and notified.
> Q.      And why is it important that it remain confidential?
> A.      Well, because some of the pricing is proprietary.
> Q.      Can you think of any legitimate reason that a bidder on the 79002-A and later bids would have had these confidential documents before the street lights contract was awarded by the City?
> A.      No.

(*See* **Exhibit 5**, Transcript of Mary Tienken Direct Examination, pg. 389)

### B.  The Prosecution's May 24 Interview of Mr. Parent Provided Sufficient Background Information to Satisfy the Concerns of Rule 16

During their May 24 interview, the prosecution elicited a great deal of information regarding Mr. Parent's views concerning City policies about transparency, including the following:

- In a case where bids had been rejected and the RFP was put out for bid again, bidders could submit a sunshine request to get access to SF-PUC internal bid analysis. These documents are public records. (Parent 302, at 6)

- SF-PUC treats all requests for information as Sunshine Act requests. An incoming request would be routed to someone at SF-PUC who would evaluate it. (Parent 302, at 7)

- There is no requirement to publish information requested by someone filing a Sunshine Act request to anyone else. Every person has to make their own request. (Parent 302, at 7.)

---

7

1

2

3

4

5

6

- ■ There are exceptions to the Sunshine Act that are not mandatory but are permissive. The Department head, Harlan Kelly, in the case of SF-PUC has discretion to disclose bid information before the contract is awarded. (Parent 302, at 8.)
- ■ If a single bidder requested bid information prior to the contract being awarded, the GM had the authority to provide it to them and had no obligation to provide the same information to the other bidders. (Parent 302, at 8.)

7

8   As the Advisory Committee Notes to Rule 16 make clear, the rule "is intended to

9   minimize the surprise that often results from unexpected testimony, reduce the need for

10  continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's

11  testimony through focused cross-examination." *United States v. Figueroa Lopez*, 125 F.3d 1241,

12  1246 (9th Cir. 1997), quoting Fed. R. Crim. P. 16(a)(1)(E) (advisory committee's note). Here,

13  by having both prosecutors conduct an in-person, multi-hour interview of Mr. Parent, where they

14  specifically discussed his views regarding the Sunshine Ordinance and the propriety of Mr. Kelly

15  disclosing certain information, the prosecution has alleviated any risk of unfair surprise that Rule

16  16 was designed to address.

17  Given the prosecution's thorough interview with Mr. Parent in May concerning precisely

18  the topic which they now claim would cause unfair surprise, the Court should reject the

19  prosecution's motion to exclude Mr. Parent.

20

21  DATED: July 9, 2023                      Respectfully submitted,
                                            LAW OFFICES OF BRIAN H GETZ

22

23                                          By:   */s/ Brian H Getz*
                                                  BRIAN H GETZ

24                                                JONATHAN M. BAUM
                                                  Attorneys for Defendant

25                                                HARLAN KELLY, JR.

26

27

8

DEFENDANT HARLAN KELLY JR.'S OPPOSITION TO THE GOVERNMENT'S
MOTION TO EXCLUDE EXPERT TESTIMONY